UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| VIVIAN K. MERIDA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 08-09-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*     \*\*\*     \*\*\*     \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Vivian Merida ("Merida") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [Record Nos. 9 and 10]  Through this action, Merida seeks to reverse the decision of an Administrative Law Judge ("ALJ") which concluded that she was not entitled to a Period of Disability and Disability Insurance Benefits ("DIB").  However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.  For the reasons discussed below, the Court will deny Merida's motion and grant the relief sought by the Commissioner.

## I.      BACKGROUND

Merida protectively filed an application for a Period of Disability and DIB on December 8, 2003.  Her claim was denied initially and on reconsideration, whereupon she

timely filed a request for a hearing before an ALJ.  On July 12, 2005, Merida, her attorney, and Vocational Expert ("VE") Dr. James H. Miller appeared before ALJ Joan A. Lawrence in Middlesboro, Kentucky.  The ALJ subsequently issued a decision denying Merida both a Period of Disability and DIB.  [Tr., pp. 18 - 26]  Merida's request for review of the ALJ's decision was denied by the Appeals Council, then remanded for reconsideration.[1]   On remand, ALJ Donald Rising presided over a second hearing on October 16, 2007, at which Merida, her attorney, and VE William Ellis were present.  The ALJ once again denied Merida a Period of Disability and DIB.

As of the date of the ALJ's decision, Merida was a 42-year-old individual with a high school education and some medical assistance training.  [Tr., p. 553]  She alleges a disability beginning November 15, 2003, due to fibromyalgia, carpal tunnel syndrome, short-term memory loss, panic attacks, diabetes, irritable bowel syndrome, and seasonal asthma.  [Tr., pp. 557-572]  Merida has past work experience as a home health aide, bookkeeper, sewing factory floor inspector, and sewing machine operator.  After reviewing the record and the testimony presented at the hearing, the ALJ concluded that, prior to March 1, 2006, and subsequent to August 31, 2007, Merida suffers from the following severe impairments: fibromyalgia, depression, and carpal tunnel syndrome.  [Tr., p. 432]

---

[1]      After the Appeals Council denied Merida's request, Merida sought judicial review from this Court.  This Court then remanded her case for further reconsideration.

Notwithstanding these impairments, the ALJ determined that Merida retained the residual functional capacity to perform some unskilled, sedentary work.  [Tr., p. 441] Specifically, the ALJ found that Merida retained the following residual functional capacities:

> to lift, push and pull 10 pounds occasionally and between 3 and 5 pounds frequently; stand/walk for 4 hours total (up to 1 hour continuously; and sit for 5 to 6 hours total (up to 1 hour continuously).  She is unable to climb or balance; can perform no more than occasional crouching, kneeling, crawling and bending; and must avoid exposure to unprotected heights, temperature extremes, pulmonary irritants, humidity and vibration.  The claimant is further limited to no more than occasional reaching, handling and feeling.

[Tr., p. 437]  Based on these findings, the ALJ determined that Merida was not disabled as defined in the Social Security Act, from November 15, 2003 through the date of the decision, November 21, 2007.

## II.    LEGAL STANDARD

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (citing 20 C.F.R. § 404.1520(b)-(g)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, a claimant must show that she suffers from a severe impairment. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual function capacity ("RFC") and relevant past work to determine if she can do past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether

the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III.    DISCUSSION**

-5-

Merida asserts that the Commissioner's decision denying benefits is not supported by substantial evidence. More specifically, she alleges that the ALJ failed to accord the opinion of her treating physician, Dr. Richard Park, controlling weight and that the ALJ's hypothetical questions to the VE did not incorporate all of the limitations noted by Dr. Park. Merida now seeks an order reversing the ALJ's decision and awarding benefits.

With respect to Merida's first argument, the Court notes that the opinions of treating physicians are generally entitled to greater weight than those of non-treating physicians. *Rogers*, 486 F.3d at 242. This is because treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927 (2006). "[I]f the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record,' then it will be accorded controlling weight." *Rogers*, 486 F.3d at 242 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

If the ALJ does not give a treating physician's opinion controlling weight, he must "always give good reasons in [his] notice of determination or decision." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). This "reasons-giving requirement" draws from 20 C.F.R. § 404.1527(d)(2) (2006), which lists a number of factors the ALJ may use in his

determination: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability through medical signs and laboratory findings; (4) consistency with the record as a whole; and (5) specialization of treating source.  The requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson*, 378 F.3d at 545.

Here, Merida asserts that Dr. Park is her treating physician but the ALJ disagreed.  Dr. Park diagnosed Merida with fibromyalgia in August 1998.  Dr. Park referred Merida to both a rheumatologist, Dr. Ruthberg, in 1998, and a neurologist, Dr. David Blake, in May 1999.  Dr. Blake's examination did not result in a conclusive diagnosis.  [Tr., p. 338]  Thereafter, Dr. Park saw Merida on 5 separate occasions for fibromyalgia flare-ups, as well as for other health issues.  [Tr., pp. 433, 297-333]  Merida also complained of depression and anxiety on a number of these visits.  However, from June 2004 to June 2006, the ALJ noted that there was "an overall lack of treatment with Dr. Park."  [Tr., p. 435]  During this time, Merida was consultatively examined by Drs. Tony Mancuso and Pamela Starkey in March 2004.  Dr. Mancuso found that, as far as fibromyalgia, Merida had "no signs of muscle atrophy or myositis" and that "all tissues were well perfused."  [Tr., p. 350]  Dr. Mancuso found no physical restriction of daily activities.  Dr. Starkey's psychological examination rendered impressions of anxiety and depressive disorders.  In July 2006, Merida went to Dr. Paul Cooney with complaints of numbness in her left upper extremity, which Dr. Cooney diagnosed as moderate bilateral carpal tunnel syndrome.  In December 2006, Dr. Cooney

-7-

gave Merida a vitamin B-12 injection for a fibromyalgia flare-up.  Then in March 2007, Merida returned to Dr. Park for treatment of a fibromyalgia flare-up.  In June 2007, Merida underwent a consultative examination by Dr. Jules Barefoot.  On the issue of fibromyalgia, Dr. Barefoot found that there was "no evidence of any muscle wasting or muscle asymmetry. There was no evidence of any limp length discrepancy."  [Tr., p. 501]  Also in June 2007, Merida underwent a psychological examination conducted by Dr. Kenneth Starkey, who rendered an impression of depressive disorder.  And finally, four months later, Merida went to Comprehensive Care complaining of depressive symptoms and suicidal thoughts dating back to 2001; she also reported experiencing panic attacks and being nervous.  [Tr., pp. 435-436]

The ALJ "carefully considered the medical evidence of record, which indicates that [Merida] has been treated primarily by primary care provider Dr. Richard Park."  [Tr., p. 433] However, he did "not consider [Dr. Park] to be a treating source considering the infrequency of his examinations and the paucity of clinical or objective signs and findings contained his records," although the ALJ "would be more inclined to accept [Dr. Park's] opinion with respect to physical functioning over that of [other doctors]."  [Tr., p. 440]

There is substantial evidence to support the ALJ's determination that Dr. Park was not a treating source.  Based on the infrequency of examination and the lack of detailed medical evidence supporting Dr. Park's opinion, the ALJ properly found that good reasons existed for not according Dr. Park's opinion controlling weight.  These reasons are sufficient under the reasons-giving requirement of 20 C.F.R. § 404.1527(d)(2).

Notably, an ALJ need only accord a treating physician's opinions greater weight if the treating physician supplies sufficient medical data to substantiate the diagnosis. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). The ALJ noted the lack of "clinical or objective signs and findings" in Dr. Park's medical records for Merida. Even so, the ALJ still considered Dr. Park's opinion over the opinions of other physicians, since the other physicians had each seen Merida only once or twice. In fact, "with regard to Merida's physical capacities, [the ALJ's decision] derives from" two forms completed by Dr. Park: a Medical Assessment of Ability to do Work-Related Activities ("Medical Assessment") and an Assessment dealing with upper extremities ("Extremities Assessment"). [Tr., pp. 440, 520-528, 536]. Thus, it is hardly arguable that, although the ALJ did not accord Dr. Park's opinion controlling weight, the ALJ did consider and use Dr. Park's findings in making his decision. There is substantial evidence in the record to support the ALJ's decision.

Second, Merida argues that the ALJ erred in formulating his hypothetical questions to the VE. Specifically, Merida asserts that the hypothetical questions on which the ALJ relied were not supported by substantial evidence because they failed to incorporate a specific limitation suggested by Dr. Park. In *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002), the Sixth Circuit reversed the Commissioner's denial of benefits because a faulty hypothetical question did not accurately describe the claimant's abilities. As the Court noted, hypothetical questions posed to VEs for the purpose of determining whether a claimant can perform other work should be a complete and accurate assessment of the claimant's physical and mental state which should include an "accurate portrayal of her

individual physical and mental impairments." *Id.* at 239; *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Myers v. Weinberg*, 514 F.2d 293, 294 (6th Cir. 1975).

Where a hypothetical question fails to describe accurately the claimant's physical and mental impairments, the defect can be fatal to the VE's testimony and the ALJ's reliance on it. An ALJ, however, is not required to restate verbatim a medical report to a VE in order to accurately state a claimant's relevant impairments. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Thus, the central question is not whether the hypothetical question posed to the VE recounts all of the medical findings, impairments and conditions, but whether it is a fair, complete and accurate summation regarding the claimant's abilities and overall mental and physical state, based upon the available evidence and testimony. *See Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Felinsky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990); *Higgs*, 880 F.2d at 863; *Varley*, 820 F.2d at 779. Hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1 235 (6th Cir. 1993).

At Merida's hearing, the ALJ asked the VE to assume someone of Merida's age, education, and work experience. In addition to this background, the ALJ added:

> [M]ore than satisfactory abilities in following work rules; relating to co-workers, using judgment; interacting with supervisors; functioning independently; maintaining attention; concentration; carrying out detailed instructions; maintaining personal appearance; demonstrating reliability. No limitation carrying out simple instructions. And limited but satisfactory

> abilities dealing with the public and work stress, complex instructions,
> behaving in an emotionally stable manner and relating predictably in social
> situations.

[Tr., pp. 574-575]. The ALJ asked the VE if a person with this background would be able
to perform any of the occupations Merida had previously performed. The VE replied that
all of her past occupations would be permitted. [Tr., p. 575]. The ALJ asked a second
hypothetical question, with the following physical restrictions:

> [L]ifting, pushing, pulling up to 10 pounds occasionally; standing, walking
> four hours in a day but no longer than an hour continuously; sitting five to six
> hours in a day but again no longer than an hour continuously; occasional
> crouch, kneel, crawl, bend; no climbing or balancing; and should avoid
> heights, temperature extremes, chemicals, dust, noise, fumes, humidity and
> vibration.

[Tr., p. 575]. Once again, the ALJ asked the VE which of Merida's past occupations would
be permitted under such conditions. The VE replied that her past work as Bookkeeper would
be permitted, even given the third hypothetical restrictions of "occasional reaching, handling,
fingering or reaching, handling, feeling." [Tr., p. 575]. The VE went on to list the number
of sedentary exertion range jobs that would be permitted given the hypothetical conditions
the ALJ had posed.

These hypothetical questions were all drawn from Dr. Park's Medical Assessment.
[Tr., pp. 521-524]. Merida argues that the ALJ should have drawn from another form
submitted by Dr. Park, in which Dr. Park concluded that Merida would miss eight to ten days
a month from a job and would not be reliable in her job duties. [Tr., p. 520].

-11-

Substantial evidence supports the ALJ's rejection of some of Dr. Park's statements in formulating the hypothetical questions.  For the same reasons that the ALJ accorded Dr. Park's opinion less than controlling weight – infrequency of examinations and lack of supporting medical evidence – it was appropriate for the ALJ to omit Dr. Park's conclusive statements regarding Merida's potential unreliability at work.  *See Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (unpublished) (finding that where the ALJ's decision to give no weight to a treating physician's opinion is supported by substantial evidence, the ALJ's failure to incorporate that physician's limitations into hypothetical questions was not error).  Dr. Park's statements that Merida would miss days of work are conclusory statements unsupported by detailed objective criteria and documentation.  The ALJ is not bound by such statements. *Buxton*, 246 F.3d at 773.  Additionally, the ALJ found that Merida "perform[ed] a wide array of daily activities" and that the "entirety of the record fail[ed] to corroborate the severity, immediacy and frequency of symptoms alleged by [Merida]."  [Tr., pp. 439-440] The ALJ noted that, although Merida asserts disability dating back to 2003, she worked full time between March 2006 and August 2007.  [Tr., p. 439]  Despite this period of work activity, the ALJ found that the medical evidence in the record failed "to reflect any significant increase in her reported fibromyalgia flare-ups." [Tr., p. 430] An ALJ may reject a physician's findings that were based on the claimant's subjective complaints, where the ALJ found that the claimant was not credible.  *Smith*, 482 F.3d at 877.

These hypothetical questions incorporated all the relevant restrictions and limitations regarding Merida's ability to work.  The ALJ carefully evaluated the relevant medical

-12-

evidence presented as well as Merida's subjective claims and evidence relating to those claims.  In doing so, the ALJ included the relevant limitations that were supported by the objective evidence.  Such limitations were sufficient to impart the relevant medical information to the VE and allowed the VE to offer an informed opinion regarding Merida's ability to find employment.  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004).

Having reviewed the record and the parties' arguments regarding Merida's allegations of disability, this Court agrees with the ALJ's findings and conclusions.  The ALJ properly considered Dr. Park's opinions in light of both his infrequent treatment of Merida – particularly during the alleged period of disability – and the lack of detailed supporting medical evidence.  Further, the ALJ incorporated all relevant and credible limitations on Merida's ability to work in his hypothetical to the VE.  Therefore, the Court finds that substantial evidence in the record supports the ALJ's determination that Merida is not disabled.

### IV.     CONCLUSION

Substantial evidence supports the ALJ's opinion.  Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Vivian K. Merida's Motion for Summary Judgment [Record No. 9] is **DENIED**;

2.      The Defendant Commissioner's Motion for Summary Judgment [Record No. 10] is **GRANTED**; and

-13-

3.      The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 19th day of September, 2008.



Signed By:

*Danny C. Reeves*  DCR

United States District Judge